# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-17-00603-001-TUC-CKJ (LAB) |
| Plaintiff, | |
| v. | **ORDER** |
| William Robert Kennemer, | |
| Defendant. | |

On July 14, 2017, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation ("R&R") (Doc. 30) in which she recommended that Defendant's Motion to Suppress/Motion for Return of Property (Doc. 10) be denied. The Court has reviewed the R&R, Defendant's Objection (Doc. 31), the Government's Response (Doc. 32), and the audio and exhibits from the Evidentiary Hearing. The Court has also considered Defendant's Motion to Suppress, Government's Response (Doc. 21), and Defendant's Reply (Doc. 23). The Court adopts the R&R, and denies Defendant's Motion.

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's recommendation, then this Court is required to "make a de novo determination of those

portions of the [report and recommendation] to which objection is made." The statute does not "require [] some lesser review by [this Court] when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 149-50, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). Rather, this Court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Id*. at 149.

No objections having been made to the magistrate judge's rendering of the procedural and factual history, the Court adopts those recitations. The Court now addresses Defendant's objections to the Magistrate Judge's R&R.

*Motion to Suppress/Motion for Return of Property*

Defendant's motion asks the court to suppress all evidence seized by agents from the Defendant's home on September 9, 2016, and the guns from the Arizona House of Guns ("gun store") on or about the same date. (Doc. 10.) Defendant contends that the seizure was a violation of his Fourth Amendment rights because he did not consent to the seizure, the incriminatory nature of the evidence was not immediately apparent (*Id*. at 3), and the discovery was not inadvertent (Doc. 31 at 2). Defendant further asks for the return of the property seized pursuant to Fed.R.Crim.P. Rule 41(g). (Doc. 10.)

The Government argues against suppression, stating that the evidence was seized lawfully because the evidence was in plain view after the Defendant consensually provided it to the agents, and its incriminating nature was immediately apparent. (Doc. 31.)

The Magistrate Judge's R&R determined that the motion to suppress should be denied because the seizure of the evidence was with Defendant's consent. (Doc. 30 at 2.) Furthermore, the evidence was in plain view and its incriminatory nature was apparent. (*Id*.)

*Factual History*

Starting as early as December 2014, ATF Special Agent David Lopez was investigating Defendant for the sale of firearms. Lopez testified that he discovered that Defendant had purchased multiple firearms of the same model on two different occasions. In addition, Bureau of Land Management agents discovered one of

Defendant's purchased firearms at the scene of a crime, in the possession of someone underage. (Exh. 2, Doc. 21-1 at 6-7.) Based on this knowledge, two ATF agents and a U.S. Border Patrol Agent visited Defendant's house December 8, 2014. Agent Lopez attested that the agents were in plain clothes with badges, and knocked on Defendant's door. Defendant appeared to be at ease and friendly. (Exh. 1, 3.)

In this first meeting, Defendant admitted to selling approximately ten to twelve firearms in the last six months and showed agents between fifteen and twenty bills of sale for firearms he sold. (Exh. 2, Doc. 21-1 at 5-6.) Defendant also admitted he made a small profit from the sales. (*Id*. at 6) An agent explained to Defendant that selling firearms required a license, and that the agent would return to the home later to provide him a warning and an application packet for the license. (*Id*. at 5, 8, 13.)

The agents returned the following day, and gave Defendant a warning letter, which he signed. (Exh. 5.) Agents also warned Defendant he needed to either obtain a license or stop selling firearms, otherwise he could be subject to prosecution for illegal purchasing and reselling of firearms. (Exh. 4, Doc. 21-2 at 7-10.) Defendant again stated he made minimal profit from the sale of firearms. (*Id*. at 13.) At this time, agents asked to look at the bills of sale again. (*Id*. at 4-5.) Defendant willingly provided the bills of sale, and agents took pictures and returned them to Defendant. (*Id*. at 4-5.) After inquiry, agents discovered one of Defendant's sales was to a convicted felon who had not had his gun rights restored. (Exh. 7, Doc. 21-3 at 37.)

Agent Lopez testified that after the warning, on February 1, 2016, an undercover agent made contact with Defendant through an ad on backpage.com. The agent purchased a gun from Defendant, and when Defendant asked the agent to create a bill of sale, the agent falsely identified himself. The Defendant never followed up on the accuracy of the personal information.

Agents also learned that a gun purchased by Defendant was later retrieved at a crime scene in California. (Exh. 7, Doc. 21-3 at 21.) Defendant had bought the handgun within the last sixty days, and sold the gun to another prohibited possessor. (*Id*.)

On September 8, 2016, agents once again returned to Defendant's home. Agents

questioned Defendant about his continuing sale of firearms, and Defendant stated he did not apply for a business license because it was too expensive and too much paperwork. (*Id*. at 13.) Defendant told agents he believed he was not conducting a business because that was not his intent, and this was another reason he refused to apply for a license. (*Id*. at 8, 18.) However, Defendant admitted he had bought and sold at least thirty-five guns in the last year. (*Id*. at 7.) He also admitted that despite the previous warning, he had not decreased the frequency of sales, but he had become more diligent in checking out his buyers. (*Id*. at 23.) Upon request, Defendant willingly provided ninety-one bills of sale to the agents, but asked the agents to return the bills. (*Id*. at 26-27.)

Defendant then stated there were five guns in the household, two of which were currently for sale on backpage.com. (*Id*. at 29.) Defendant showed the firearms to agents, who seized only those firearms that Defendant indicated were for sale. (*Id*. at 30-31.) Defendant also told agents that there were firearms located at the gun store he likely would sell as well. (*Id*. at 35.)

Agent Lopez explained to Defendant that he was seizing the large number of bills of sale and the two firearms Defendant indicated were for sale because they demonstrated he was doing business without a license. (*Id*. at 36, 38.) Agents later retrieved Defendant's guns for sale from the gun store.

### *Standard of Review*

Under the Fourth Amendment, individuals enjoy the right to be free from unreasonable searches and seizures, and unwarranted seizures are presumptively unreasonable. *Katz v. United States*, 389 U.S. 347, 357 (1967). However, if evidence is in plain view, and its "incriminating character . . . is immediately apparent" the seizure does not violate a defendant's rights. *Horton v. California*, 496 U.S. 128, 137 (1990). For an item to be in plain view, "the officer [must] be lawfully located in a place from which the object can plainly seen, but he or she must also have a lawful right of access to the object itself." *Id*.

#### *Plain View Doctrine*

Defendant argues that because he did not consent to the seizure, the seizure was

unlawful. This argument defies logic, however, for if obtaining consent were required before seizing a person's property, agents likely would never be able to obtain evidence. In this instance, Defendant consented to show agents the evidence. Agents were then permitted to seize the bills of sale and weapons under the plain view doctrine, and consent was not required for the seizure.

- *Lawful Position*

Neither party disputes that agents were lawfully at the house at the time of seizure. Agents were situated in front of the house and only entered with Defendant's permission.

- *Right of Access*

Defendant argues that agents did not have rightful access to the evidence because the discovery was not inadvertent. Defendant's own cited case law conflicts with his assertions. *Horton v. California*, 496 U.S. 128, 137 (1990), explains why requiring the discovery of evidence to be inadvertent is not a prerequisite for plain view seizures:

> [E]venhanded law enforcement is best achieved by applying objective standards of conduct, rather than standards that depend upon the officer's subjective state of mind. The fact that an officer is interested in an item and fully expects to find it should not invalidate its seizure if the search is confined in area and duration by a warrant's terms or by a valid exception to the warrant requirement.

Here, agents had rightful access to the evidence because Defendant willingly provided it to them. When agents asked if Defendant had bills of sale for the weapon used in the crime, Defendant produced a large stack of bills. Then agents asked whether they could look at the firearms Defendant was selling, and Defendant agreed and produced the weapons. Defendant's consent was sufficient right of access for the plain view doctrine. Just because he later decided he wanted the evidence back does not negate that he provided lawful access, and at the moment he brought the evidence to the agents, they had a right to seize it.

- *Incriminating Nature of Evidence*

Once these items were within agents' sight, under the circumstances it was immediately apparent that they were evidence that Defendant was conducting a business

selling firearms. First, the nature was obvious because the number of bills of sales had more than quadrupled since the agents last visited the home. Agents had previously warned Defendant to either cease selling guns or get a permit. The bills and Defendant's statements demonstrated he had clearly done neither. Defendant also admitted he was selling the two seized firearms at the home online and that he would more than likely sell the guns at the gun store as well.

Defendant also argues that because agents had not conclusively determined that he was making a profit they could not lawfully seize the evidence. Agents did not need to determine profit in order to find that the incriminatory nature of the evidence was readily apparent. Defendant had previously admitted he made minimal profit on the sales. Instead, it is the guns advertised for sale, the guns Defendant admitted to likely selling in the near future, the sheer volume of bills of sale, the meticulous recordkeeping, and Defendant's concession he had not acquired a permit that provided probable cause that the nature of the evidence revealed that Defendant was dealing firearms without a license.

***Arizona House of Guns***

Defendant further alleges that the seizure of weapons from the gun store was without a warrant and violated his right against unreasonable seizures. From the evidence presented, the Court cannot determine how the agents retrieved the guns from the gun store. However, Defendant contends that agents "simply went into the Arizona House of Guns; requested the guns be produced; and seized the guns". This suggests that the store consented to the seizure, and Defendant raises no objections to the contrary. But, even if he had, the Court finds Defendant does not have standing to object to the seizure, because he had no expectation of privacy on the gun shop's property. *See U. S. v. Salvucci*, 448 U.S. 83, 9192 (1980) ("[A]n illegal search only violates the rights of those who have "a legitimate expectation of privacy in the invaded place.") (internal quotations omitted); *see also Brown v. United States*, 411 U.S. 223, 229 (1973) (Defendant had no standing to contest seizure when (1) defendant was not present during seizure, (2) defendant had no proprietary interest in premises, and (3) possession was not element of charged offense.).

The Court finds that: (1) the agents were lawfully at the Defendant's home, (2) the

Defendant provided lawful access to the evidence by consensually presenting the bills of sale and firearms to the agents, and (3) the incriminatory nature of the bills of sale and firearms at Defendant's home was immediately apparent. Further, Defendant does not have standing to challenge the seizure of the guns found at Arizona House of Guns. The Defendant's Fourth Amendment rights were not violated, and suppression is not appropriate.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation (Doc. 30) is ADOPTED.
2. Defendant's Motion to Suppress Motion for Return of Property (Doc. 10) is DENIED.

Dated this 16th day of August, 2017.

_____
Honorable Cindy K. Jorgenson
United States District Judge